UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THE LIFE IS GOOD COMPANY, )<br>    Plaintiff )<br>)<br>v. )<br>)<br>MYLOCKER.COM, LLC; NAMECHEAP, )<br>INC. and RAMNODE LLC, )<br>    Defendants ) | C.A. No. 1:17-cv-11911 |

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION

INTRODUCTION

Plaintiff The Life is Good Company ("Life is Good") has filed a motion requesting that this Court issue a preliminary injunction enjoining and restraining defendant Mylocker.com, Inc. ("Mylocker") from (1) providing the software that allows the operator of the www.lifeisgoodshirt.com website to upload designs and offer them for sale at the www.lifeisgoodshirt.com website; (2) providing payment processing services in connection with the sale of products through the www.lifeisgoodshirt.com website; (3) providing fulfillment services in connection with the printing and shipping of products sold through the www.lifeisgoodshirt.com website; and (4) providing customer service to support sales at the www.lifeisgoodshirt.com website. Additionally, Life is Good has moved that this Court enter a preliminary injunction enjoining and restraining defendants Namecheap, Inc. and RamNode LLC from providing web hosting, website management, server management, and/or any other services in connection with the operation of the www.lifeisgoodshirt.com website.

Defendants' services allow the www.lifeisgoodshirt.com website to operate and to serve

1

as a platform for the sale of products that infringe Life is Good's trademarks. Despite repeated notices from Life is Good, defendants have taken no steps to disable the infringing [www.lifeisgoodshirt.com](www.lifeisgoodshirt.com) website or to prevent the website from continuing to offer for sale infringing products – forcing Life is Good to bring this action and seek equitable relief.

STATEMENT OF FACTS

A. The Plaintiff and its "LIFE IS GOOD", "Jake" and "Jackie" Trademarks.

Since at least as early as 1994, and continuously therefrom, the Plaintiff and its predecessors (Albert Jacobs and John Jacobs, previously doing business as Jacobs Gallery) have sold various products such as t-shirts, hats, pants, other clothing, stickers, flying discs, coffee mugs, *inter alia*, under the trademark "LIFE IS GOOD." The goods have been sold to retail stores and consumers directly by Life is Good, through its licensees, or through its web site. *See* Verified Complaint ("VC"), ¶ 7. Since 1994, the Plaintiff has continuously and pervasively utilized its "LIFE IS GOOD" trademark within this district and throughout the United States on its products, on hang tags, displays, boxes, packaging and labels, at its website ([www.lifeisgood.com](www.lifeisgood.com)), and in catalogs and other places. VC, ¶ 8. In short, the Plaintiff has invested substantial resources in promoting its products under the "LIFE IS GOOD" mark, and in developing national recognition of its "LIFE IS GOOD" mark and brand. As a result, the "LIFE IS GOOD" mark is perceived as a distinctive indicator of Plaintiff as the source of the goods. VC, ¶ 9.

On December 24, 1996, the United States Patent and Trademark Office (the "U.S.P.T.O.") issued a registration for Plaintiff's trademark "LIFE IS GOOD," registration number 2,025,737 (the "'737 Registration" ). The registration was issued to Jacobs Gallery. The goods under this registration are "Sportswear, namely T-shirts, sweatshirts, shirts, hats, pants,

and shorts." The trademark was assigned by Jacobs Gallery to Life is good, Inc. on April 16, 1998. On April 6, 2002, the U.S.P.T.O. accepted Life is Good's section 8 and 15 affidavit for the '737 registration, and thus, it has become incontestable pursuant to 15 U.S.C. § 1065. The trademark was renewed on January 11, 2017, and is currently in full force and effect. On October 15, 2008, the change of the name of the registrant to The Life is Good Company was recorded with the U.S.P.T.O. VC, ¶ 10. In addition, Life is Good has ten (10) other U.S. trademark registrations for the "LIFE IS GOOD" trademark for a variety of goods and services, and has registered the "LIFE IS GOOD" trademark in Canada, Europe and numerous other countries. VC, ¶ 11.

Further, the Plaintiff, through assignment from Jacobs Gallery, is the owner of the "Jake Symbol," which Life is Good utilizes as a trademark on or in connection with many of the products it sells. VC, ¶ 12. An example of the "Jake Symbol" is attached to the Verified Complaint as Exhibit A. The "Jake Symbol" was registered on April 22, 1997, U.S. Reg. Number 2,055,452, and was assigned to Plaintiff on April 16, 1998. The U.S.P.T.O. accepted Life is Good's section 8 and 15 affidavit for the "Jake Symbol" registration, and thus, it has become incontestable pursuant to 15 U.S.C. § 1065. The "Jake Symbol" trademark registration has been renewed and is currently in full force and effect. VC, ¶ 13. Life is Good also owns the trademark rights in the female version of the "Jake Symbol" – known as "Jackie" – which Life is Good has used in connection with the sale of clothing since at least 2002. VC, ¶ 14.

The trademark "LIFE IS GOOD" appears on or in connection with every product sold by Life is Good, and the "Jake Symbol" and "Jackie" appear on many of Life is Good's products. VC, ¶ 15. For many years Life is Good has marketed its products and offered its products for sale at its internet web site located at www.lifeisgood.com. Representative pages from Life is

Good's web site are attached to the Verified Complaint as Exhibit B.

B. The Defendants and Their Infringing Activities.

Plaintiff recently learned of the existence of a website at the domain www.lifeisgoodshirt.com. The www.lifeisgoodshirt.com website is a counterfeit website in that it mimic's Life is Good's website by using Life is Good's trademarks, images, logos and slogans in order to draw Life is Good's customers to the site. Further the www.lifeisgoodshirt.com website offers for sale counterfeit versions of Life is Good t-shirts, in particular t-shirts that infringe the LIFE IS GOOD, "Jake Symbol" and "Jackie" trademarks. Representative pages from the www.lifeisgoodshirt.com website are attached to the Verified Complaint as Exhibit C.

Through investigation Life is Good has learned that all three defendants are providing services to the www.lifeisgoodshirt.com website in order to facilitate infringing sales at that site. Defendant Mylocker (1) provides the software that allowed the operator of the www.lifeisgoodshirt.com website to create the website, upload the infringing designs and offer them for sale at the www.lifeisgoodshirt.com website; (2) provides payment processing services to complete the sales of the infringing products; (3) provides fulfillment services in connection with the printing and shipping of the infringing products; (4) provides customer service to support the infringing sales; and (5) provides the ability for customers to return items to Mylocker directly. VC, ¶ 19. On information and belief, upon each sale Mylocker reimburses itself for "production costs" and pays itself a processing fee, and then pays out the remaining revenue to the operator of the www.lifeisgoodshirt.com website. VC, ¶ 20.

Defendant Namecheap provides website/server management services for the www.lifeisgoodshirt.com website that permit the website to operate and make its infringing sales. VC, ¶ 21. Defendant RamNode hosts the www.lifeisgoodshirt.com website on its

platform.  VC, ¶ 22.

While both Namecheap and RamNode purport to have complaint procedures that meet the requirements of the Digital Millennium Copyright Act ("DMCA"), in fact Life is Good's counsel submitted complaints pursuant to those procedures on Wednesday, September 27, 2017, and as of the filing of this lawsuit had received no response from either Namecheap or RamNode.  VC, ¶ 23.  Further, Namecheap and RamNode's complaint procedures do not meet the requirements of the DMCA.  Defendants fail to promptly act on complaints submitted through their respective procedures.  Further, the DMCA "safe harbor" provisions only apply to copyright infringement claims; thus Defendants' on-line portals afford Namecheap and RamNode no "safe harbor" from Life is Good's claims of trademark infringement.  VC, ¶ 24.

Life is Good's counsel sent a letter by email and overnight mail to the president of Mylocker on September 27, 2017 demanding that Mylocker immediately disable the www.lifeisgoodshirt.com website.  Life is Good's counsel also left a voicemail message through Mylocker's telephone number (it is not possible to reach a live person through Mylocker's telephone number) on September 29, 2017, and the same day tried to reach Mylocker through the counsel that prosecuted its trademark application.  Despite these efforts Mylocker has not responded to Life is Good's demand that it disable the www.lifeisgoodshirt.com website, and the website remains operating as of the filing of this complaint.  VC, ¶ 25.

Defendants' actions have caused and/or contributed to confusion, and/or are likely to cause and/or contribute to confusion, mistake, or deception among the consuming public as to the source or origin of the products sold on the www.lifeisgoodshirt.com website, and are likely to create a false belief that sales on that website are authorized by or sponsored by Life is Good. As a result, defendants' actions are causing, and unless enjoined will continue to cause, damage

5

to the substantial goodwill that Life is Good has developed in its marks and brand. VC, ¶ 26. If defendants are not enjoined from continuing their infringing conduct, Life is Good will suffer immediate and irreparable harm. VC ¶ 27.

ARGUMENT

I. LIFE IS GOOD IS ENTITLED TO A PRELIMINARY INJUNCTION.

In order to obtain a preliminary injunction, the moving party must demonstrate: (1) a likelihood of success on the merits; (2) a risk of irreparable harm if an injunction is not issued; (3) that the balance of harms favors the moving party; and (4) that the public interest favors issuance of an injunction. *See, e.g., Commerce Bank & Trust Co. v. TD Banknorth, Inc.*, 554 F. Supp. 2d 77, 83 (D. Mass. 2008). In a trademark infringement action the likelihood of success factor is the crucial factor, because irreparable harm is presumed to result from trademark infringement. *See, e.g., Borinquen Biscuit Corp. v. M.V. Trading Corp.*, 443 F.3d 112, 115 (1st Cir. 2006). As shown below, Life is Good easily satisfies all four factors for issuance of a preliminary injunction.

A. Life is Good Is Likely to Succeed on the Merits of Its Claims.

In order for Plaintiff to prevail on its trademark claims, it must demonstrate (1) Plaintiff is the owner of valid trademarks; and (2) Defendant's use of similar names or marks is likely to cause consumer confusion. *Star Fin. Servs, Inc. v. AASTAR Mort. Corp.*, 89 F.3d 5, 9 (1st Cir. 1996). The record amply supports the conclusion that Life is Good owns exclusive rights in its "LIFE IS GOOD", "Jake Symbol" and "Jackie" trademarks, and that the various shirts and other products sold on Defendant's website are likely to cause consumer confusion.

1. <u>Life is Good is the Owner of the "LIFE IS GOOD", "Jake Symbol" and "Jackie" Trademarks.</u>

There can be no doubt that Life is Good is the owner of the exclusive rights in and to its "LIFE IS GOOD" and "Jake Symbol" trademarks. Both marks have been duly registered with the U.S.P.T.O., and those registrations are valid and in full force. Such registration is "prima facie evidence of the validity of the registered Mark[s]." 15 U.S.C. § 1115(a). Further, each U.S. Trademark Registration "is prima facie evidence that such mark has become distinctive of the goods in commerce." *Quabaug Rubber Co. v. Fabiano Shoe Co.*, 567 F.2d 154, 161 (1st Cir. 1977).

In addition, the "LIFE IS GOOD" and "Jake Symbol" trademarks are now incontestable under 15 U.S.C. § 1115. Thus, "the registration shall be conclusive evidence of the validity of the registered mark and the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce." 15 U.S.C. § 1115(b). "Indeed, a plaintiff who holds an incontestable registered mark is generally entitled to a preliminary injunction enjoining an allegedly infringing party." *Dorpan, S.L. v. Hotel Melia, Inc.*, 728 F.3d 55, 62 (1st Cir. 2013).

Further, Life is Good owns the common law trademark rights in the female version of the "Jake Symbol" – known as "Jackie" – which Life is Good has used in connection with the sale of clothing since at least 2002.

In short, Life is Good is the owner of valid trademarks for "LIFE IS GOOD", the "Jake Symbol" and "Jackie", and is entitled to enforce its rights in those marks against Defendant's infringement.

2. Defendant's Contribution to the Unauthorized Use of the "LIFE IS GOOD", "Jake Symbol" and "Jackie Trademarks Is Likely to Cause Consumer Confusion.

As the Court is aware, courts in the First Circuit typically analyze eight (8) factors in assessing likelihood of confusion. A review of those factors confirms that Defendant's services that foster the unauthorized use of the "LIFE IS GOOD", "Jake Symbol" and "Jackie" Trademarks is likely to cause consumer confusion.

a. Similarity of the Marks.

As exemplified in Exhibit C, the www.lifeisgoodshirt.com website is offering for sale numerous t-shirts containing counterfeit copies of Life is Good's trademarks. Thus, the marks are not similar, they are identical. This factor strongly favors a finding of a likelihood of confusion. Further, where, as here, the parties' goods directly compete, similarity of the marks "can be highly influential." *Oriental Financial Group, Inc. v. Cooperativa de Ahorro Y Credito Oriental*, 2016 U.S. App. LEXIS 14162, *18 (1st Cir. 2016).

b. Similarity of the Goods.

Life is Good's trademarks cover t-shirts, and Life is Good sells t-shirts through its www.lifeisgood.com website. Similarly, the www.lifeisgoodshirt.com website, which the defendants support through their services, is a counterfeit version of Life is Good's website and sells virtually identical t-shits to those sold by Life is Good. Thu, the respective goods are identical and, once again, this factor strongly supports a finding of a likelihood of confusion.

c. Channels of Trade, Advertising, and Classes of Prospective Purchasers.

These three factors are typically analyzed together. *Beacon Mut. Ins. Co. v. OneBeacon Ins. Group*, 376 F.3d 8, 19 (1st Cir. 2004). Both Life is Good and the www.lifeisgoodshirt.com website advertise and sell virtually identical t-shirts to consumers of those products. As such,

these factors militate in favor of the Plaintiff.

   d. Actual Confusion

Evidence of actual confusion is not necessary to prove likelihood of confusion. *Pignons S.A. de Mecanique de Precision v. Polaroid Corp.*, 657 F.2d 482, 490 (1st Cir. 1990). Yet, despite the fact that Life is Good only discovered the www.lifeisgoodshirt.com website a little over one week ago, Life is Good is aware of one customer who contacted it and expressed confusion about the www.lifeisgoodshirt.com website. If the www.lifeisgoodshirt.com website is allowed to continue to operate, confusion will undoubtedly increase. Thus, this factor is neutral.

   e. Defendant's Intent.

Defendants have known since at least September 27, 2017 that the www.lifeisgoodshirt.com website is a counterfeit website infringing Life is Good's trademark rights. Yet the defendants have taken no steps to disable the site or prevent the ongoing infringing sales – and at least with respect to Mylocker continue to profit from those infringing sales. Defendants' conduct constitutes willful infringement and powerful evidence of plaintiff's need for injunctive relief.

   f. Strength of the Marks.

Plaintiff owns two incontestable U.S. Trademark Registrations for the Trademarks at issue. Further, plaintiff has continuously and pervasively used those marks in interstate commerce since 1994, and has done the same with respect to its "Jackie" trademark since 2002. There can be no doubt that plaintiff owns strong trademarks that are entitled to broad protection against infringement. This factor supports a finding of a likelihood of confusion.

In short, even a cursory review of the relevant factors leads to the inescapable conclusion that Life is Good is more than likely to succeed on the merits of its trademark claims.

B. <u>Life Is Good Is Suffering Irreparable Harm</u>.

Where, as here, Plaintiff has established a likelihood of success on its trademark claims, irreparable harm is presumed. *See Commerce Bank & Trust Co.*, 554 F. Supp. 2d at 83. Beyond the presumption of harm, Life is Good has made a showing that it is suffering actual irreparable harm resulting from defendants' conduct. Defendants' services permit the [www.lifeisgoodshirt.com](www.lifeisgoodshirt.com) website to operate and offer for sale t-shirts that infringe plaintiff's Trademarks. At least one of the defendants, Mylocker, has profited from sales of those infringing products and continues to do so. Despite numerous notices from Life is Good, defendants have taken no steps to disable the site or prevent the ongoing infringing sales. This harm to Life is Good's goodwill and business reputation will continue until this Court enjoins defendants.

C. <u>The Balance of the Harms Weighs in Favor of The Plaintiff</u>.

Life is Good has made a powerful showing of irreparable harm – both presumed and actual. In contrast, "harm to the defendant flowing from an injunction where infringement appears likely is entitled to less consideration than other harms." *Id.* Here, the only harm that defendants would suffer as a result of the issuance of an injunction would be their inability to profit from infringing sales – clearly a harm of no import. Thus, the balance of the harms strongly favors the plaintiff and the issuance of an injunction.

D. <u>An Injunction Will Serve the Public Interest</u>.

Here, Life is Good has demonstrated a tremendous likelihood of success on the merits, and that showing alone "is sufficient to place the weight of public interest concerns in favor of granting the injunction." *Boustany v. Boston Dental Group, Inc.*, 42 F. Supp. 2d 100, 113 (D. Mass. 1999). The issuance of an injunction will prevent consumer confusion, which undoubtedly is in the public interest. Thus, because the public interest will be served by issuance of an injunction, the Court should grant plaintiff's request and enjoin Defendants'' infringing conduct.

## CONCLUSION

For the reasons set forth above, Plaintiff The Life is Good Company respectfully requests that this Court enter a preliminary injunction enjoining and restraining defendant Mylocker.com, Inc. ("Mylocker") from (1) providing the software that allows the operator of the www.lifeisgoodshirt.com website to upload designs and offer them for sale at the www.lifeisgoodshirt.com website; (2) providing payment processing services in connection with the sale of products through the www.lifeisgoodshirt.com website; (3) providing fulfillment services in connection with the printing and shipping of products sold through the www.lifeisgoodshirt.com website; and (4) providing customer service to support sales at the www.lifeisgoodshirt.com website. Additionally, Life is Good requests that this Court enter a preliminary injunction enjoining and restraining defendants Namecheap, Inc. and RamNode LLC from providing web hosting, website management, server management, and/or any other services in connection with the operation of the www.lifeisgoodshirt.com website.

.

THE LIFE IS GOOD COMPANY,
By its attorneys,


   /s/ Thomas E. Kenney
Thomas E. Kenney (#561590)
Pierce & Mandell, P.C.
11 Beacon Street, Suite 800
Boston, MA 02108
(617) 720-2444
tom@piercemandell.com

## CERTIFICATE OF FILING

I, Thomas E. Kenney, hereby certify that on October 4, 2017, this document, filed through the ECF system, was sent electronically to the registered participants as identified on the Notice of Electronic Filing, and paper copies will be served via first-class mail to those indicated as non-registered participants.


/s/ Thomas E. Kenney
Thomas E. Kenney